

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00444-CV

Edward **BRAVENEC**,
Appellant

v.

Ed **FLORES**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-06356
The Honorable Janet P. Littlejohn, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Catherine Stone, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  March 20, 2013

AFFIRMED

Ed Flores ("Flores") moved for sanctions in the trial court against attorney Edward Bravenec ("Bravenec") and his client Michael Westheimer ("Westheimer").  The trial court granted sanctions against Bravenec, and he appeals the court's sanctions judgment.  We affirm.

### BACKGROUND

GMAC Mortgage LLC, ("GMAC") acquired residential property ("the property") by foreclosure and enlisted Cathy Goodwin ("Goodwin") of Keller Williams/Heritage Realty to sell the property.  Goodwin advertised the property for sale and Flores and Westheimer responded

with electronic or faxed bids. Flores's offer of $45,000.00 was accepted. At or near the time of acceptance, Westheimer submitted an offer of $49,200.00 for the property which was rejected.

Westheimer filed suit against Flores, Goodwin, Keller Williams/Heritage Realty, and GMAC alleging common law fraud arising out of his attempt to purchase the property and sought actual and punitive damages. Flores answered and filed his motion for sanctions. Westheimer amended his petition four times in the next ten months, modifying the factual allegations and adding numerous claims. Bravenec, as Westheimer's counsel, signed each of the petitions. Flores filed a motion for summary judgment. The trial court granted that motion, severed Flores from the main cause, and specifically carried forward his pending motion for sanctions in the severed cause. Westheimer non-suited his claims against Flores, and the court signed an order of nonsuit.

Flores filed an amended sanctions motion in which he sought recovery of costs and attorney's fees under Rule 13 of the Texas Rules of Civil Procedure, chapter 10 of the Texas Civil Practices and Remedies Code, and the Texas Deceptive Trade Practice-Consumer Protection Act. The trial court conducted a sanctions hearing during which Flores offered and the trial court admitted in evidence exhibits and testimony. Bravenec noted he had not previously received the exhibits but, not wanting to delay the hearing, he requested leave to provide documents in response to the exhibits, if necessary. He further noted he was unaware that evidence would be heard because the setting was on the non-evidentiary docket, and therefore requested that the hearing be reset. The trial court refused to reset the case, heard evidence and argument, granted the motion, and ordered Bravenec to pay Flores and his attorney $1,500.00 and court costs. The court also ordered Bravenec could avoid the financial sanctions by performing ten hours of community service and completing a State Bar-sponsored ethics refresher course. The trial court incorporated the separate summary judgment and sanctions

orders into a final judgment, and Bravenec appeals the judgment as to the court ordered sanctions.

## COMPLAINTS ABOUT THE SANCTIONS HEARING

Bravenec makes several complaints concerning how the trial court conducted the hearing on the sanctions motion and the evidence it considered.

### *Applicable Law*

The trial court has great discretion concerning the conduct of trials. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam). Evidentiary rulings and the granting or denial of motions for continuance are committed to the trial court's sound discretion and will not be disturbed unless the record discloses a clear abuse of discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *U-Haul Int'l*, 380 S.W.3d at 132. "In deciding whether a trial court abused its discretion, the appellate court does not substitute its judgment for that of the trial court, but only decides whether the trial court's action was arbitrary and unreasonable." *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex. 1986).

### *Discussion*

Bravenec complains the trial court ultimately excluded evidence admitted without objection at the sanctions hearing. However, at the beginning of the hearing, Bravenec objected to the receipt of evidence. The trial court initially admitted the evidence, but it reconsidered Bravenec's objection and disregarded the hearing testimony. Under the invited error doctrine, Bravenec cannot predicate a claim upon appeal on action that he requested the court take. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005); *In re Marriage of Palacios*, 358 S.W.3d 662, 664 (Tex. App.—Amarillo 2009, pet. denied).

Bravenec also contends the trial court erred by denying his request for continuance because the sanctions hearing was set on the non-evidentiary hearing docket and he was not prepared to present witnesses. Bravenec did not file a written motion for continuance and, on this record, the trial court did not abuse its discretion by denying his oral motion. *See Dempsey v. Dempsey*, 227 S.W.3d 771, 776 n.1 (Tex. App.—El Paso 2005, no pet.) (where request for continuance is oral and unsupported by affidavit, it will be presumed that trial court did not abuse its discretion in denying continuance; granting or denial of a motion for a continuance is within trial court's sound discretion); *see also Villegas*, 711 S.W.2d at 626 (same); TEX. R. CIV. P. 251.

Bravenec also asserts the trial court erred when it considered some, but not all, of the oral evidence presented at the sanctions hearing. The trial court's order provides it "disregard[ed] the testimony given at the hearing" and considered only the motion for sanctions, amended motion, exhibits, and argument of counsel. Bravenec assumes the disregarded oral testimony authenticated the documentary evidence considered by the court. It did not. The trial court took judicial notice of and admitted exhibits 1-8, 10-36, and 38, which included pleadings, orders, correspondence, and deposition exhibits. *See Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 779 (Tex. App.—Fort Worth 2009, no pet.). Bravenec did not object at the hearing to the court's taking judicial notice of the exhibits nor did he object to their authentication. He objected only to Flores not previously providing him the exhibits and withdrew that objection to the pleadings and orders and applied it only to "all the rest of the stuff." His objections concerning all of the documents were either withdrawn or waived. *See, e.g.*, *Flores v. City of Liberty*, 318 S.W.3d 551, 560 (Tex. App.—Beaumont 2010, no pet.) (blanket objection not sufficiently specific to preserve error). The trial court erred neither in disregarding the oral testimony nor in admitting and considering exhibits 1-8, 10-36, and 38. Bravenec's complaint that the trial court admitted

no evidence on which to base the sanctions fails because the trial court properly admitted this documentary evidence.

Bravenec contends the trial court erred by failing to consider his response and his brief on the issue of good faith. He also argues the court erred in excluding these responses without giving him notice. Because Bravenec neither responded to the sanctions motion before nor appeared at the first hearing, the court ordered that no response to the motion could be filed or considered. The trial court was within its discretion in prohibiting the late-filing of a response to the sanctions motion. *See Dow Chem.*, 46 S.W.3d at 240. Flores's oral request that no late responses be filed was sufficient because it was made during a hearing Westheimer and Bravenec failed to attend despite having notice. *See* TEX. R. CIV. P. 21 (motion must be written and served on opponent unless presented during hearing). Moreover, Bravenec's excluded response and brief contained argument and assertions of fact, but no supporting affidavits or evidence. Accordingly, excluding these pleadings was harmless error, if it was error at all. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) (harmless error rule, applicable to all errors, provides that to reverse judgment because of error of law, reviewing court must find error "probably caused the rendition of an improper judgment"); *U-Haul Int'l*, 380 S.W.3d at 132. (even if trial court abused its discretion, reversal is appropriate only if error was harmful, that is, it probably resulted in improper judgment); TEX. R. APP. P. 44.1(a)(1).

Bravenec's complaints are waived as to defects in the sanctions motion and affidavit because he failed to object in the trial court. *See* TEX. R. APP. P. 33.1. Furthermore, there is no requirement that the sanctions motion be verified. *See* TEX. R. CIV. P. 13. It is also clear Flores's attorney had personal knowledge of the matters addressed in the affidavit and it was sufficient. *See Lopez v. Sonic Rests., Inc.*, No. 04–10–00318–CV, 2010 WL 4008374, at \*2 (Tex. App.—San Antonio, Oct. 13, 2010, pet. denied) (mem. op.) (personal knowledge

requirement is satisfied if affidavit reflects how affiant gained personal knowledge of matters stated); *Valenzuela v. State & County Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (affidavit must show affiant is testifying from personal knowledge and stating facts; affiant's position or job responsibilities can qualify him as having personal knowledge of facts and establish how he learned facts); *Churchill v. Mayo*, 224 S.W.3d 340, 347 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (affidavit that does not state that facts recited are true, but is based on personal knowledge and is subscribed and sworn before notary public, is not defective).

Bravenec also complains that the trial court did not set out the reasons for the imposition of sanctions in its order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.005 (West 2002) (court shall describe in sanction order offending conduct and explain basis for sanction imposed); TEX. R. CIV. P. 13 (court must specify in order particulars for imposition of sanctions). A complaint regarding a trial court's compliance with these requirements may be waived if the error is not preserved by objection or a request that the particular grounds for awarding sanctions be set out by the court. *E.g., Nolte v. Flournoy*, 348 S.W.3d 262, 273 (Tex. App.—Texarkana 2011, pet. denied); *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied); *Spiller v. Spiller*, 21 S.W.3d 451, 456 (Tex. App.—San Antonio 2000, no pet.). Bravenec does not direct us to nor do we find any indication in the record that he presented this complaint to the trial court. Bravenec therefore waived the complaint by failing to object or otherwise preserve error. *See, e.g., Nolte*, 348 S.W.3d at 273; *Spiller*, 21 S.W.3d at 456.[1]

Each of these complaints was waived or the trial court's action was within its discretion. *See U-Haul Int'l*, 380 S.W.3d at 132: *Dow Chem.*, 46 S.W.3d at 240; *Villegas*, 711 S.W.2d at

---

[1] Bravenec contends that this court's holding in *Spiller* conflicts with our later decision in *Hughes v. Aames Funding Corp.*, No. 04-00-00442-CV, 2000 WL 1919705 (Tex. App.—San Antonio Dec 20, 2000, no pet.) (not designated for publication). We disagree. *Hughes* is distinguishable because waiver was not an issue before this court.

626. Accordingly, we overrule those complaints. We therefore consider whether the record contains any evidence to support an implied finding that the pleadings were sanctionable. *See Robson*, 267 S.W.3d at 407.

COMPLAINT ABOUT IMPOSITION OF SANCTIONS

Flores asserted the lawsuit was frivolous and sanctions were warranted with respect to each of the amended petitions. Bravenec contends there was insufficient evidence to support the imposition of sanctions and insufficient evidence to show that he acted with a malicious or discriminatory purpose or to show his subjective, malicious state of mind.

### *Applicable Law*

Chapter 10 of the Civil Practices and Remedies Code provides that the signing of a pleading or motion constitutes a certificate by the signatory that, to the best of the signatory's knowledge, "each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Low v. Henry*, 221 S.W.3d 609, 614–15 (Tex. 2007) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3) (West 2002)). Each allegation and factual contention in a pleading or motion must have, or be likely to have, evidentiary support after a reasonable investigation. *Id*. at 615. A trial court may impose sanctions against a party if the court finds that the party has failed to comply with this requirement. *Nolte*, 348 S.W.3d at 269 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a) (West 2002)).

Rule 13 of the Rules of Civil Procedure allows a court to impose sanctions on a party, counsel, or both for pleadings, motions, or other papers signed and filed that are groundless and brought in bad faith or for the purpose of harassment. *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 348 (Tex. App.—San Antonio 2006, pet. denied). The rule defines "groundless" as

- 7 -

having no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. TEX. R. CIV. PROC. 13. Groundlessness turns on the legal merits of a claim. *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 184 (Tex. App.— Texarkana 2011, no pet.). A claim without evidentiary support is groundless for purposes of Rule 13, as it has no basis in fact or law. *Nath v. Texas Children's Hosp.*, 375 S.W.3d 403, 427 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). To determine if a pleading was groundless, the trial court uses an objective standard: did the party and counsel make a reasonable inquiry into the legal and factual basis of the claim? *Loeffler*, 211 S.W.3d at 348; *see Robson*, 267 S.W.3d at 405. The court will look to the facts available to the litigant and the circumstances at the time the suit was filed. *Robson*, 267 S.W.3d at 405. There must have been a reasonable inquiry, which means the amount of examination that is reasonable under the circumstances. *Robson*, 267 S.W.3d at 406 (citing *Monroe v. Grider*, 884 S.W.2d 811, 817 (Tex. App.—Dallas 1994, writ denied)).

In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must consider the acts or omissions of the represented party or counsel, not merely the legal merit of a pleading or motion. *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex. App.—Dallas 1993, no writ.); *see Davila v. World Car Five Star*, 75 S.W.3d 537, 544 (Tex. App.—San Antonio 2002, no pet.). The party moving for sanctions must prove the pleading party's subjective state of mind. *Thielemann v. Kethan*, 371 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). Bad faith does not exist when a party merely exercises bad judgment or is negligent; rather bad faith is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes. *Thielemann*, 371 S.W.3d at 294. A party acts in bad faith if he has been put on notice that his claim may be

groundless and he does not make reasonable inquiry before pursuing the claim further. *See Robson*, 267 S.W.3d at 407; *Monroe*, 884 S.W.2d at 818 (concluding public policy supports lesser standard for bad faith under Rule 13 than under DTPA). A court may therefore find bad faith where a party asserts a claim with knowledge that the evidence fails to support the claim. *Nath*, 375 S.W.3d at 427. "Harass" is used in a variety of legal contexts to describe words, gestures, and actions that tend to annoy, alarm, and verbally abuse another person. *Thielemann*, 371 S.W.3d at 294 (citing *Elkins v. Stotts–Brown*, 103 S.W.3d 664, 669 (Tex. App.—Dallas 2003, no pet.)).

Courts must presume that pleadings are filed in good faith, and the burden is on the party moving for sanctions to overcome that presumption. *GTE Commc'n Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993). Under some circumstances, the trial court may be able to make such a determination by taking judicial notice of items in the case file. *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App.—Texarkana 2000, no pet.). Circumstantial evidence will suffice to allow a trial court to infer bad faith and improper motive. *Dike*, 343 S.W.3d at 194. A party cannot avoid Rule 13 sanctions by claiming he was not actually aware of the facts making his claim groundless when he had not made reasonable inquiry, nor by claiming he was not acting with malicious or discriminatory purpose in bringing the claim. *Robson*, 267 S.W.3d at 407.

The imposition of sanctions is within the sound discretion of the trial court, and we set aside the order only upon a clear showing of abuse of discretion.[2] *Low*, 221 S.W.3d at 614; *see Tanner*, 856 S.W.2d at 730. The determination whether the court's imposition of sanctions constitutes an abuse of discretion requires an examination of the entire record. *Loeffler*, 211

---

[2] Under the abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but are relevant in determining whether the trial court abused its discretion. *Beaumont Bank, N.A. v. Butter*, 806 S.W.2d 223, 226 (Tex. 1991).

S.W.3d at 347. A trial court abuses its discretion in imposing sanctions only if it bases the order on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Id.* at 347–48. An appellate court, therefore, will view the conflicting evidence in the light most favorable to the trial court's ruling and will draw all reasonable inferences in favor of the trial court's judgment. *Id*. at 348.

### *Discussion*

Flores asserts that each of Westheimer's petitions warrants the imposition of sanctions. We primarily consider the allegations of the second amended petition because Flores' motion for sanctions and motion for summary judgment with affidavits later introduced in the sanctions hearing were filed and Westheimer's deposition was taken before that petition was filed. *See Robson*, 267 S.W.3d at 405, 407 (court must examine circumstances at time pleading was filed; party acts in bad faith if he has notice his claims may be groundless and does not make reasonable inquiry before pursuing them further). In the second amended petition, Westheimer alleged that Goodwin falsely represented the property was for public sale and any potential buyer "would have a fair chance to" buy even though she intended to sell to Flores; that through several telephone conversations with Westheimer's agent (Chumney, who is not a party), Goodwin knew Westheimer was going to submit a higher offer than Flores's but used GMAC's system to lock out that higher offer; that Flores and Carlos Trevino ("Trevino") were partners and, acting together to receive a lower price on the property, agreed with Goodwin that Trevino would forego his commission in exchange for a lower sales price; that Goodwin defrauded Westheimer by refusing his higher offer to sell to Flores; and that Trevino *agreed* to act as Westheimer's broker to make an offer on the property. Westheimer asserted causes of action for common law fraud, DTPA violations, breach of fiduciary duty by Trevino, "Westheimer's broker," breach of warranties by real estate agents, Trevino and Goodwin, and that all parties are

liable for all actions of the other parties under agency or partnership theories or for conspiracy. Westheimer sought actual damages in the amount of the "benefit of the bargain," absent defendant's fraud, and punitive damages.

The evidence available to Westheimer and Bravenec at the time the second amended petition was filed and before the trial court on the motion for sanctions was sufficient to support the impositions of the sanctions in this cause. Based on the affidavit testimony of Goodwin, the GMAC real estate manager, Westheimer's real estate agents, and Westheimer's deposition testimony, the trial court could have reasonably determined that: (1) Goodwin never spoke to or met Westheimer, his wife, Flores or Trevino; and (2) Westheimer never spoke to Goodwin, anyone at GMAC or Flores. Westheimer testified his real estate agents, Niles Chumney and Laura Clark-Arguijo, had more knowledge of the underlying facts, but their affidavit testimony refuted that claim.[3] Those agents testified they never communicated with Goodwin, Flores, or anyone at Keller/Williams or GMAC, except for faxing Westheimer's offers and receiving an email advising that his offer was not accepted.[4] As to the acceptance of Flores's offer, Goodwin entered Flores's offer into the GMAC computer tracking system, as she was required to do, and GMAC accepted that offer—thereby automatically and immediately locking out all other offers—before Westheimer communicated any offer to Goodwin.

---

[3] Clark-Arguijo swore in her affidavit that she was not Westheimer's real estate agent and did not represent him in his efforts to purchase the property.

[4] After Westheimer's supposed agents failed to corroborate his allegations that they had telephone conversations with Goodwin, Bravenec asserted in open court that Niles Chumney "said under oath that they [sic] were no calls between him and Cathy Goodwin. I don't know how else to put it, Niles is a liar and … an extremely unprofessional person, and I'm going to be able to show that when I get these phone records." In this hearing, Bravenec made statements such as "[m]y *client alleges* that in fact Niles Chumley [sic] had many conversations with Ms. Goodwin;" *and "I suspected*, she [Goodwin] locked out my client's offer after about six phone calls with," but never indicated he had any information rather than speculation to contradict Chumney's sworn affidavit testimony. Moreover, he had deposed none of these individuals, he had not received the phone records he sought, and the records sought were "cell phone registries" which would not show the content of the telephone calls.

We have not been directed to and have found no authority to support the existence of a listing agent's duty to a potential buyer as Westheimer claims. Westheimer admitted in his pleadings that his offer was rejected, and he had no contract for the purchase of the property. Once rejected, an offeror has no further rights regarding a contract the offeree may enter. *See El Paso Cmty. Partners v. B & G/Sunrise Joint Venture*, 24 S.W.3d 620, 626 (Tex. App.—Austin 2000, no pet.) (generally one not party to agreement has no interest in terms of contract); *see also Kinman v. Howard*, 465 S.W.2d 400, 401 (Tex. Civ. App.—Waco 1971, no writ) (everyone has right to select with whom he will contract and another cannot be thrust upon him). Nevertheless, Westheimer's tort and statutory claims sought to recover "benefit of the bargain" damages as though he had purchased the property on which his purchase contract was rejected and to which he has no contractual claim. A party may not recover damages for alleged tortious conduct asserted to have deprived that party of a legal right he did not possess. *See Cissne v. Robertson*, 782 S.W.2d 912, 916–18 (Tex. App.—Dallas 1989, writ denied) (broker could not recover damages on claims of fraud, tortious interference with contract and civil conspiracy where he was not mentioned in and could not recover on real estate contract). The trial court could have reasonably determined that Westheimer's claims had no factual or legal basis. *See Bradt v. Sebek*, 14 S.W.3d 756, 768 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

Westheimer's allegations of wrongdoing are primarily against Goodwin; Flores is generally alleged to be liable for Goodwin's actions "under agency and/or partnership theories" or otherwise derivatively. Even assuming that Goodwin committed some wrongful act, Bravenec directs us to no facts or authority that would make Flores liable for those acts and we are aware of none.

Westheimer asserts that Trevino was his real estate broker as a basis for several claims. Westheimer did not allege that Trevino was his agent and again, he directs us to no evidence nor

do we find any establishing Trevino represented Westheimer in the transaction or any agreement existed. To the contrary, Westheimer's offer in the brokerage information section of the contract lists only Chumney as "Buyer's agent." There is no reference to Trevino in Westheimer's offer, and it is clear that Chumney was Westheimer's agent. On the basis of this offer alone, the trial court could have reasonably concluded that Trevino was not Westheimer's agent and did not represent him in the transaction, but was a stranger to the offer on the property. *See Cissne*, 782 S.W.2d at 916–18 (broker not named in purchase agreement was stranger to transaction); TEX. OCC. CODE ANN. §§ 1101.002 (1), (7); .557(a) (West 2012) ("A broker who represents a party in a real estate transaction or who lists real estate for sale under an exclusive agreement for a party is that party's agent."); *Id.* § 1101.558 (c), (d) (together indicating broker must consensually represent party to be agent). The trial court could have reasonably concluded that Trevino was not Westheimer's agent or broker and rejected all assertions based on that claim.

Westheimer also alleged that Goodwin, Trevino, and Flores conspired to make the sale to Flores appear to be an arms-length transaction and to defraud Westheimer and others. He admitted he had no knowledge of a conspiracy by Goodwin, Flores or Trevino and both Chumney and Clark-Arguijo disclaimed any knowledge of any conspiracy or wrongdoing. A civil conspiracy consists of a combination by two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *see Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (setting out elements of civil conspiracy). On the record before it, the trial court could have reasonably determined that there was no evidence to support the claims and allegations of conspiracy against Goodwin, Trevino, and Flores and could have reasonably found no factual or legal basis for those claims. *See Bradt*, 14 S.W.3d at 766–68.

Westheimer also asserts breaches of alleged warranties arising from statutory provisions and regulations applicable to real estate agents and brokers by Goodwin and Trevino "acting with" Flores. As Westheimer pled, those statutes and regulations apply only to licensed real estate salespersons and brokers. *See* TEX. OCC. CODE ANN. §§ 1101.002(4), .652(b) (West 2012); 22 TEX. ADMIN. CODE §§ 531.1–.3; 535.156(b), (d) (2012). The trial court could have reasonably concluded that Flores was not a real estate salesperson or broker, he had no duty to comply with the statutes and regulations asserted, and he had no liability for failing to comply with those provisions.

The trial court granted Flores's traditional and no evidence motions for summary judgment on all claims indicating that there was no evidence of some or all of the essential elements of the claims alleged. *See Bradt*, 14 S.W.3d at 765; TEX R. CIV. P. 166a (c), (i). In considering the sanctions motion, the trial court could have concluded that Flores's only actions with respect to the property were to make a legitimate offer to purchase in accordance with the listing and, when that offer was accepted, to close the sale, rehabilitate the property, and later sell it. The trial court could have also reasonably concluded that, at the time the original and each amended petition was filed, differing allegations and factual contentions in each of the pleadings did not have, and were not likely to have, evidentiary support after a reasonable investigation. *See Low*, 221 S.W.3d at 615–16. The trial court, therefore, could have properly imposed sanctions under chapter 10 of the Civil Practices and Remedies Code.

Long before the second amended petition was filed, pleadings and evidence in the affidavits and deposition put Bravenec on notice that the claims against Flores may be groundless and therefore required him to make reasonable inquiry before pursuing the claims further. *See Robson*, 267 S.W.3d at 407 (party acts in bad faith if he has notice his claims may be groundless and he does not make reasonable inquiry before pursuing them further). To make

reasonable inquiry would have required at least that he effectively investigate with his client and his client's alleged real estate agents, *as the defendants had done*. *See Robson*, 267 S.W.3d at 406 (reasonable inquiry requires amount of examination that is reasonable under circumstances). Bravenec also noticed 35 depositions while Flores was a party to the lawsuit, but did not take a single one. The trial court could have concluded that, had he reasonably investigated, Bravenec would have discovered that neither Westheimer nor his alleged real estate agents had any dealings or contact with any of the parties. Thus, contrary to Westheimer's allegations, Goodwin made no misrepresentations that he could have relied upon in submitting his offer for the property. *See Bradt*, 14 S.W.3d at 766. Likewise, investigation would have disclosed that Westheimer could not recover damages upon his claims as though he had purchased the property. *See Cissne*, 782 S.W.2d at 916–18. At the time the second amended petition was filed, the trial court could have reasonably concluded factual allegations in the petition had no basis in fact; the alleged legal claims had no basis in fact or law and did not present a good faith argument for the extension, modification, or reversal of existing law; and all the asserted claims were groundless. *See Bradt*, 14 S.W.3d at 765. Furthermore, viewing the evidence most favorably to the judgment, the trial court could have inferred that Bravenec did not reasonably investigate the facts to support the allegations and, by this objective standard, it could have also determined the second amended petition was groundless. *See Loeffler*, 211 S.W.3d at 348. Likewise, the trial court could have inferred that, because Bravenec did not make reasonable inquiry despite being on notice, he acted in bad faith in violation of Rule 13. *See Loeffler*, 211 S.W.3d at 349 (bad faith finding supported by fact that opposing attorney pointed out deficiencies in claims made in prior pleadings); *see also Robson*, 267 S.W.3d at 407. The trial court, therefore, could have properly imposed sanctions under rule 13 of the Texas Rules of Civil Procedure.

After reviewing the evidence considered by the trial court and the entire record, we conclude that the trial court did not abuse its discretion in imposing sanctions on Bravenec. Having overruled each of Bravenec's issues and arguments on appeal, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice