**Reversed in Part and Affirmed in Part and Memorandum Opinion filed May 11, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00044-CV

---

## IN THE INTEREST OF G.M., A CHILD

---

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-13128**

---

## MEMORANDUM OPINION

Appellants Daniel Humphrey and Norma Almanza appeal the trial court's order in a suit to modify the parent-child relationship. The trial court ordered that appellee Victoria Morris ("Mother") and appellants be named joint managing conservators of G.M. ("the Child"), Morris's child and Humphrey and Almanza's great nephew. In four issues appellants challenge (1) the legal and factual sufficiency of the evidence to support the jury's findings that appellee's parental rights should not be terminated; (2) the trial court's possession order; (3) the trial court's denial of appellants' motion for new trial; and (4) the assessment of sanctions against

appellants' attorney. Concluding the evidence does not support assessment of sanctions we reverse that portion of the trial court's order and affirm the remainder of the judgment.

BACKGROUND

## I.    Pretrial Proceedings

The Child was born in 2012. Two years later Mother was convicted of driving while intoxicated ("DWI") with the Child in the car. Mother voluntarily placed the Child with appellants who subsequently filed a petition to be named joint managing conservators of the Child. The trial court named appellants joint managing conservators and named appellee, Mother, and Corey Meyer, the Child's father ("Father"), as possessory conservators.

Three years later Mother completed her probation and moved to modify the parent-child relationship alleging the circumstances of the Child had materially and substantially changed since the earlier order. Mother requested that she be named joint managing conservator with appellants. Mother also sought the exclusive right to establish the residence of the Child, the right to receive and disburse child support, and the right to make educational, medical, psychological, and psychiatric decisions for the Child. While Mother's motion to modify was pending, Father passed away. Appellants filed a counterpetition in which they alleged Mother's parental rights should be terminated on grounds of endangerment. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D) & (E).

## II.    Trial Testimony

The parties proceeded to a jury trial where the following witnesses testified: (1) Mother; (2) Kristen Goodson, the Child's paternal aunt; (3) Joshua Morris, Mother's husband; (4) Donna Lynn Tuman, Joshua's mother; (5) appellants; and (6)

2

Erika Kaiser and Robert Chaya, Almanza's friends.

Mother admitted that before the Child was born, she had been arrested for family violence. Mother testified that the arrest came as a result of an altercation with Father. Mother described the relationship with Father as abusive. Mother admitted to a possession charge and the DWI conviction. Mother voluntarily placed the Child with appellants after the DWI conviction.

Mother successfully completed four years of probation following the DWI and completed substance abuse treatment. Mother had not used substances, including alcohol, since 2014. Since completing probation Mother remarried and had another child. Mother completed parenting classes, engaged in counseling, and graduated from cosmetology school. At the time of trial Mother expected to receive a cosmetology license within the week and had a job waiting for her once she was licensed. Mother was current on child support owed to appellants, but still owed attorney's fees. Mother testified that appellants excluded her from family functions preventing her from seeing the Child at holidays.

Kristen Goodson, the Child's paternal aunt, testified that Mother had changed since her DWI conviction. Goodson cited Mother's counseling, cosmetology school attendance, and addiction treatment as ways in which Mother had improved her life.

Joshua Morris, Mother's husband, testified that he and Mother had one child, who was two years old at the time of trial. Morris testified that he had convictions for theft and possession of a controlled substance, and two misdemeanor convictions for DWI. The last conviction occurred six years before trial. Since that time Morris stopped using alcohol, and stopped associating with "people who would lead [him] down the wrong path." For up to five months preceding trial appellants had not allowed Morris or Mother to see the Child.

3

After Mother rested on her petition to modify the parent-child relationship, appellants moved for directed verdict on their counterpetition for termination of Mother's parental rights. Appellants sought termination of Mother's parental rights under section 161.001(b)(1)(D) and (E) (endangerment) of the Family Code. The trial court denied appellants' motion for directed verdict.

Appellant Daniel Humphrey testified that the Child was placed with them approximately five years earlier when Mother was arrested for DWI. Humphrey testified that Mother was allowed to visit the Child at their house upon her release from jail. Appellants sought more structured visitation after seeing Mother "aggressively correcting" the Child when he called appellants "Mommy and Daddy." Appellants arranged for Mother to visit the Child at locations other than their home for the next several months. All of Mother's visits were supervised by appellants.

During an Easter visit in 2015, after the Child had lived with appellants for approximately nine months, appellants refused Mother's request to go to appellants' home to extend her visit with the Child. According to Humphrey, in response to appellants' refusal, Mother "began acting angrily." After the Easter visit appellants decided to have Mother's visits supervised by Child Protective Services ("CPS"). At that time, the trial court issued a standard possession order, which allowed Mother supervised visitation on the first, third, and fifth weekends of each month.

After Mother filed a petition to modify conservatorship seeking joint managing conservatorship with appellants, appellants changed the nature of Mother's supervised visitation. Almanza supervised the visits rather than Humphrey, and the visits all took place in public locations. Appellants elected to have Almanza supervise the visits because Almanza was a teacher and was required to submit to random drug screening and had a duty to report alleged abuse. The change in

4

visitation was in response to allegations Mother made in the petition that appellants were engaging in alcohol and drug use.

Approximately six months before trial appellants proposed supervised visitation through a third party at Mother's expense. Mother rejected the proposed supervised visits through the third party, Guardians of Hope. Eventually, appellants, on the advice of their attorney, stopped allowing Mother to visit the Child at all.

Appellants rested without renewing their motion for directed verdict on termination of Mother's parental rights.

## III. Jury Charge and Verdict

Neither party objected to the jury charge, which submitted grounds for termination of Mother's rights alleging endangerment under Family Code section 161.001(b)(1)(D) and (E). *See* Tex. Fam. Code § 161.001(b)(1)(D), (E). The charge further submitted questions on whether appellants and Mother should be named joint managing conservators and whether Mother should have the exclusive right to designate the primary residence of the Child. The jury found (1) Mother's parental rights should not be terminated; (2) Mother and appellants should be named joint managing conservators; and (3) Mother should not have the exclusive right to designate the primary residence of the child in place of appellants.

## IV. Hearing on Possession and Access

After the jury was dismissed, the trial court held a hearing on possession and access. At the hearing Mother testified that she was financially able to pay 50 percent of the Child's medical costs as a joint managing conservator. Mother requested an "expanded" possession order, specifically, that on the first, third, and fifth weekends the Child would stay with Mother from Thursday night through Monday morning.

Almanza testified that appellants did not want Mother to have full weekend

5

visitation and requested that any visitation be supervised through Guardians of Hope.

The trial court entered a standard possession order granting Mother visitation on the first, third, and fifth weekends of each month, beginning on Friday and ending at 6:00 p.m. Sunday. *See* Tex. Fam. Code § 153.312. The trial court further ordered Mother extended visitation during the summer, but allowed appellants to designate certain weeks during the summer during which they could visit the Child.

The trial court signed a final judgment on December 20, 2019. Appellants filed a request for findings of fact and conclusions of law on January 21, 2020, but did not file a timely reminder of past due findings. The trial court did not file findings of fact and conclusions of law.

## ANALYSIS

In four issues appellants challenge (1) the legal and factual sufficiency of the evidence to support the jury's finding that Mother's parental rights should not be terminated; (2) the trial court's possession order; (3) the trial court's denial of appellants' motion for new trial; and (4) the assessment of sanctions against appellants' attorney. We address each of appellants' issues in turn.

## I. Appellants did not preserve their sufficiency challenges for review.

In their first issue appellants contend the evidence was legally and factually insufficient to support the jury's finding that Mother's parental rights should not be terminated. When a party attacks an adverse finding on an issue for which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The party must show that the evidence conclusively establishes the proposition contrary to the jury's finding, in this case, that Mother's parental rights should be terminated. *See id.* This is a legal sufficiency

6

complaint. *Id.*

When a party attacks the factual sufficiency of an adverse finding on which it bore the burden of proof, it must establish that the finding is against the great weight and preponderance of the evidence. *Id.* at 242; *Burton v. Prince*, 577 S.W.3d 280, 285 (Tex. App.—Houston [14th Dist.] 2019, no pet.). This is a factual sufficiency complaint. *See Dow Chem.*, 46 S.W.3d at 242.

In a case tried to a jury, a legal sufficiency complaint must be preserved in the trial court. *Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The complaint may be preserved in one of five ways: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *Id.* at 435. In contrast, a party challenging the factual sufficiency of the evidence to support a jury finding must raise the issue in a motion for new trial to preserve error. *See* Tex. R. Civ. P. 324(b)(2), (3); *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 748 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Appellants did not challenge the legal or factual insufficiency of the evidence to support the jury's finding on termination in their motion for new trial. Although appellants filed a motion for new trial, the grounds were limited to jury misconduct. Appellants did not assert a motion for judgment notwithstanding the verdict or a motion to disregard the jury's answer to the question on termination. Appellants also failed to object to submission of the termination question to the jury on sufficiency grounds. Appellants have therefore failed to preserve error with regard to the factual sufficiency of the evidence and did not preserve error on legal sufficiency under any of those vehicles. *See* Tex. R. Civ. P. 324(b)(2), (3); *Dow Chem.*, 46 S.W.3d at 242.

Appellants did move for a directed verdict at the close of Mother's evidence.

Mother, however, did not bear the burden of proof on appellants' counterpetition for termination of her parental rights. Appellants did not re-urge their motion for directed verdict following presentation of their evidence. Appellants' motion for directed verdict at the close of Mother's evidence was not adequate to preserve error about the jury's finding on termination because appellants proceeded to offer evidence after the trial court denied the motion. *See Garden Ridge*, 504 S.W.3d at 435 (holding that party did not preserve a legal sufficiency challenge on an issue on which it bore the burden of proof when it presented evidence following the denial of its motion for directed verdict); *see also Meek v. Onstad*, 430 S.W.3d 601, 610 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A motion for directed verdict at the close of the plaintiff's case-in-chief is insufficient to preserve a complaint of legal insufficiency of the evidence if a defendant offers evidence after denial of this motion.").

We have reviewed the remainder of the record and determined that appellants did not preserve error by any other method. "The core principle underlying error-preservation requirements is that the trial court should be given the opportunity to correct potential errors before the case proceeds on appeal." *Garden Ridge*, 504 S.W.3d at 435 (quoting *Liberty Mut. Ins. Co. v. Heitkamp*, No. 14-12-00873-CV, 2014 WL 261010, at *1 (Tex. App.—Houston [14th Dist.] Jan. 23, 2014, pet. denied) (mem. op.). Appellants did not provide the trial court the opportunity to render judgment on their counterpetition for termination, or grant a new trial on the issue. Accordingly, appellants did not preserve their legal sufficiency issue, i.e., that they conclusively established that Mother's parental rights should be terminated. Appellants also failed to preserve their factual sufficiency issue, i.e., that the jury's finding was against the great weight and preponderance of the evidence. We overrule appellants' first issue.

8

**II. Appellants did not preserve their complaint that the trial court abused its discretion in deviating from the standard possession order.**

In appellants' second issue they contend the trial court abused its discretion by ordering a modified standard possession order.

In suits affecting the parent-child relationship, there is a rebuttable presumption that a standard possession order, as outlined in the Family Code, is in the best interest of the child. *See* Tex. Fam. Code § 153.252. A court may deviate from the terms of the standard order if those terms would be unworkable or inappropriate and against the child's best interest, or if there is an agreement between the parties. *See id*. §§ 153.253, 153.255. In ordering terms other than those contained in a standard order, a court may consider (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factors. *Id*. § 153.256. The trial court may also place conditions on a parent's access, such as supervised visitation, if necessary for the child's best interest. *In re K.S.*, 492 S.W.3d 419, 429 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing Tex. Fam. Code § 153.004(e)) ("It is a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of past or present child neglect"). We give wide latitude to a trial court's determinations on possession and visitation issues, reversing the court's decision only if it appears that the court abused its discretion in light of the record as a whole. *See In re S.A.H.*, 420 S.W.3d 911, 930 n.31 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).

Appellants contend that the trial court abused its discretion in declining appellants' request for supervised visitation in the possession order. Appellants

further contend the trial court failed to "state in writing the specific reasons for the variance from the standard order." Appellants failed to raise these objections in the trial court at the hearing on possession and access, depriving the trial court of the opportunity to correct any error. Thus, appellants failed to preserve this issue for appeal. *See* Tex. R. App. P. 33.1(a); *In re A.J.I.L.*, No. 14-16-00350-CV, 2016 WL 6110450, at *5 (Tex. App.—Houston [14th Dist.] Oct. 18, 2016, pet. denied) (mem. op.) (holding that father's failure to object to the trial court's deviation from the standard possession order waived any error).

Appellants further failed to preserve their complaint that the trial court did not file findings of fact and conclusions of law. Although appellants timely requested findings of fact and conclusions of law they did not file a timely notice of past due findings. *See* Tex. R. Civ. P. 297 (Notice of Past Due Findings of Fact and Conclusions of Law required to be filed within 30 days after filing the original request). Therefore, appellants' complaint that the court failed to issue findings and conclusions is waived due to appellants' failure to file the notice in a timely manner. *See Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255 (Tex. 1984); *Hardin v. Hardin*, 161 S.W.3d 14, 20 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We overrule appellants' second issue.

## III. The trial court did not abuse its discretion in denying appellants' motion for new trial.

### A. Motion for New Trial and Hearing

Appellants filed a motion for new trial in which they alleged a new trial should be granted because two jurors talked with the other jurors during deliberations, telling the jurors about their "own life stories." The motion for new trial was supported by an affidavit from one of the jurors in which she averred:

> One juror shared that she was a single mom when she was very young

10

and had a 21-year-old daughter. She shared that she turned her life around, had a relationship with her daughter, and sympathized with the mother. She also stated that she is a school registrar and sees this kind of legal paperwork all the time. She further stated, if we voted "yes" on option #2 for Joint Conservatorship shared by the mother and the aunt & uncle caring for the boy, that would mean that the 7-year-old boy would immediately be able to spend the 1st, 3rd, and 5th weekends, unsupervised, with his mother. While the latter information was helpful to know, it was wholly inappropriate to share her personal story and that she could identify with the mother in this case.

A second juror shared that he had been separated, coincidentally, as a 7-year-old boy from his mother, when her parental rights were terminated, but later developed a good relationship with her as an adult. He stated that this had been very difficult on him and he was surprised he had been placed on this jury with this as his history. While his history was known to us because he was questioned about it during voir dire, it also was wholly inappropriate to reintroduce this information to us during deliberations when it was most likely to sway jurors as we were making our decisions.

*****

Shortly after the two jurors spoke about their personal experiences, the alternate juror, who was present, but not participating in our discussions, interrupted our deliberations and spoke up that what the two jurors had revealed about their personal lives was wrong, not allowed during jury deliberations, and needed to stop.

Appellants alleged that the inappropriate comments by two jurors, and the presence of the alternate juror during deliberations, amounted to such a denial of their rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment.

The trial court held a hearing at which the juror who filed the affidavit testified. The juror testified to the facts in her affidavit and said that before the two other jurors recounted their personal experiences, two jurors had voted to terminate Mother's parental rights and ten had voted not to terminate. The vote after the two

11

jurors shared their stories remained the same. The juror testified that the stories told by the two jurors did not influence her decision.

Appellants requested a new trial on the grounds of jury misconduct, specifically alleging that misconduct occurred because the alternate juror deliberated with the jury and two of the jurors recounted personal stories during deliberations. Mother's attorney moved for sanctions against appellants' attorney alleging the motion for new trial was filed only to harass Mother. The trial court denied the motion for new trial and orally announced sanctions of $1,000 against appellants.

**B.     Standard of Review and Applicable Law**

We review the trial court's denial of appellants' motion for new trial under the abuse-of-discretion standard of review. *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000); *In re A.V.T.R.*, No. 14-19-00986-CV, 2021 WL 924372, at *5 (Tex. App.—Houston [14th Dist.] Mar. 11, 2021, no pet.) (mem. op.).

Texas Rule of Civil Procedure 327(b) states:

> A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Tex. R. Civ. P. 327(b).

Texas Rule of Evidence 606(b) provides:

> (1) ***Prohibited Testimony or Other Evidence***. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any

12

statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) *Exceptions*. A juror may testify:

(A) about whether an outside influence was improperly brought to bear on any juror; or

(B) to rebut a claim that the juror was not qualified to serve.

Tex. R. Evid. 606(b).

Both Rule 327(b) and Rule 606(b) provide that jurors may not testify about statements or matters occurring during jury deliberations, but they may testify about an outside influence improperly brought to bear on a juror. *See* Tex. R. Evid. 606; Tex. R. Civ. P. 327. Under binding precedent from both the Supreme Court of Texas and this court, the jurors' discussion of improper matters during deliberations does not constitute the bringing to bear of an outside influence on a juror; thus, Rule 327(b) and Rule 606(b) prohibit a trial court from considering a juror's testimony as to such discussions. *See Golden Eagle Archery, Inc.*, 24 S.W.3d at 370, 373–74; *Wichman v. Kelsey-Seybold Med. Group, PLLC*, No. 14-18-00641-CV, 2020 WL 4359734, at *3 (Tex. App.—Houston [14th Dist.] July 30, 2020, no pet.) (mem. op.).

## C. Application

In today's case, a juror testified as to alleged juror misconduct by two jurors during deliberations, sharing personal experiences with the other jurors. According to the witness in the motion for new trial hearing, the alleged sharing of the personal experiences had no effect on her verdict, nor did it change the vote of the jurors taken before the stories were told. The juror's affidavit and testimony concerned statements or matters occurring during jury deliberations and did not address an outside influence brought to bear on a juror. *See Golden Eagle Archery, Inc.*, 24

13

S.W.3d at 370, 373–74. Appellants did not submit any evidence from a source other than a juror. As noted above, Rule 327(b) does not permit testimony by a juror about deliberations but only permits testimony about an outside influence. The personal anecdotes recounted by two of the jurors during deliberations were not an outside influence as contemplated by the rules of civil procedure. *See Wichman*, 2020 WL 4359734, at *4 (trial court did not err in denying motion for new trial where juror testified that two jurors shared personal stories during deliberations). The trial court did not abuse its discretion in denying the motion for new trial. We overrule appellants' third issue.

## IV. The trial court abused its discretion in assessing sanctions for a groundless pleading.

In appellants' fourth issue they contend the trial court abused its discretion in finding that appellants' motion for new trial was groundless and ordering sanctions in the amount of $1,000.

### A. Trial Court's Oral Sanction Order

In response to appellants' motion for new trial, Mother moved for sanctions alleging the motion for new trial was a groundless pleading under Texas Rule of Civil Procedure 13 and Chapter 10 of the Civil Practice and Remedies Code. Mother also asserted the motion for new trial was frivolous and brought for the purpose of harassment, delay, and to increase litigation costs. At the hearing on the motion for new trial Mother's attorney orally moved for sanctions on the grounds asserted in her motion. At the end of the hearing, the trial court assessed sanctions as follows:

> The Court finds that the pleading was groundless and brought in bad faith for the purpose of harassment. As such, the Court is sanctioning the attorney's conduct and ordering that attorney's fees in the amount of — I'm sorry, sanctions in the amount of $1,000 be paid to the Respondent for this motion for new trial.

14

Appellants' counsel orally requested findings of fact and conclusions of law as to the motion for new trial but otherwise did not object to the sanctions. Appellants did not request findings of fact and conclusions of law in writing following the hearing. The trial court's final judgment ordered that each party was responsible for their own attorney's fees, but did not assess the $1,000 sanction amount orally pronounced during the motion for new trial hearing. We found no authority requiring the trial court's assessment of sanctions to be in writing. As discussed below, however, the trial court's assessment of sanctions is required to be supported by a finding of good cause under Texas Rule of Civil Procedure 13. Moreover, under Chapter 10 of the Civil Practice and Remedies Code, the trial court is required to describe the conduct the court has determined violated section 10.001 and explain the basis for the sanction imposed. Tex. Civ. Prac. & Rem. Code § 10.005.

## B.    Standard of Review and Applicable Law

We review a trial court's imposition of sanctions under an abuse of discretion standard of review. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). Generally, courts presume pleadings are filed in good faith. *Id*. The party seeking sanctions must therefore overcome this presumption of good faith. *Id*.

Because Mother's motion for sanctions alleged that appellants' motion for new trial was groundless and brought in bad faith or for the purpose of harassment, both Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Civil Practice and Remedies Code are applicable to this case. Rule 13 provides for sanctions for pleadings that are "groundless and brought in bad faith or groundless and brought for the purpose of harassment." Tex. R. Civ. P. 13; *see Nath*, 446 S.W.3d at 361. Chapter 10 authorizes sanctions for "pleadings filed with an improper purpose or that lack legal or factual support." *Nath*, 446 S.W.3d at 362; Tex. Civ. Prac. & Rem. Code § 10.001. Both Rule 13 and Chapter 10 require the sanctions

15

order to state a reason for the sanction. Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code § 10.005. Rule 13 requires that the sanction be based on "good cause, the particulars of which must be stated in the sanction order," Tex. R. Civ. P. 13, and Chapter 10 requires that the order describe the sanctionable conduct and "explain the basis for the sanction imposed." Tex. Civ. Prac. & Rem. Code § 10.005. Failure to state the particulars of good cause in a Rule 13 sanction order is an abuse of discretion. *Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied).

However, when the party against whom sanctions are imposed fails to object to the form of the sanctions order, the party waives any objection to the lack of particularity in the order. *Gomer*, 419 S.W.3d at 478; *Robson*, 267 S.W.3d at 407. Here, the record does not contain a written order of sanctions and appellants did not object to the trial court's oral pronouncement. Therefore, to the extent appellants' issue challenges the form of the sanctions order, it is waived. *Akhtar v. Leawood HOA, Inc.*, 525 S.W.3d 814, 820 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Appellants argue, however, that the trial court abused its discretion in finding the filing of the motion for new trial was groundless. We construe this to be an argument about the evidentiary support for the trial court's sanctions order. *See* Tex. R. App. P. 38.1; *Perry v. Cohen*, 272 S.W.3d 585, 588 (Tex. 2008) (appellate briefs to be construed reasonably, yet liberally, and appellate courts should reach merits of appeal whenever reasonably possible). In that circumstance, we review the record for evidence of an implied finding that the claim was groundless and brought in bad faith or for the purpose of harassment. *See Gomer*, 419 S.W.3d at 478; *Robson*, 267 S.W.3d at 407. Similarly, sanctions imposed under Chapter 10 must be supported by evidence adduced at a hearing that supports a trial court's determinations "about the

party's or the attorney's motives and credibility." *Gomer*, 419 S.W.3d at 480.

A party who moves for sanctions bears the burden to establish a right to relief by proving its assertions. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding). Because that burden must be met with evidence, legal sufficiency of the evidence is relevant in determining whether the trial court abused its discretion by imposing sanctions. *Yuen v. Gerson*, 342 S.W.3d 824, 827 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

The party seeking sanctions first must establish that the signed document is groundless. *See* Tex. R. Civ. P. 13. As used in Rule 13, "groundless" means having "[n]o basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.*; *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (emphasizing that "groundless" means "there is no arguable basis for the cause of action"). A pleading is groundless if the represented party or counsel failed to make an objectively reasonable inquiry into the legal and factual basis of the claims at the time the pleading was filed. *See Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "Reasonable inquiry" means the amount of examination that is reasonable under the circumstances of the case. *Robson*, 267 S.W.3d at 406. To determine the reasonableness of the inquiry, a court must examine the facts available to the litigant or counsel and the circumstances that existed when the document was signed and filed. *See Harrison*, 363 S.W.3d at 863–64; *Robson*, 267 S.W.3d at 405. Because courts begin with the presumption that signed papers are filed in good faith, the party seeking sanctions must rebut the presumption by producing competent evidence that a reasonable inquiry made at that time would have revealed the groundless nature of the challenged matter. *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam).

17

In addition to proving groundlessness, a party seeking sanctions also must prove that the challenged document was signed in bad faith or for the purpose of harassment. *See* Tex. R. Civ. P. 13; *Unifund*, 299 S.W.3d at 97. To meet this burden, the party seeking sanctions must overcome the presumption that the challenged document was filed in good faith. *See Nath*, 446 S.W.3d at 361. In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must consider the acts or omissions of the represented party or counsel, not merely the legal merit of a pleading or motion. *See Mann v. Kendall Home Builders Constr. Partners I, Ltd.*, 464 S.W.3d 84, 92 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Tanner*, 856 S.W.2d at 731 ("Rule 13 does not permit sanctions for every pleading or motion that requests relief which is denied."). To establish bad faith, the movant must show more than mere negligence or bad judgment. *Mann*, 464 S.W.3d at 92. We have described the movant's obligation to establish bad faith as "a heavy burden" because bad faith consists of "the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Loya v. Loya*, No. 14-12-00385-CV, 2013 WL 830940, at *3 (Tex. App.—Houston [14th Dist.] Mar. 5, 2013, no pet.) (mem. op.). A party acts in bad faith if it has been put on notice that its understanding of the facts may be incorrect, and the party does not make reasonable inquiry before pursuing the claim further. *Robson*, 267 S.W.3d at 407.

## C.    Application

At the hearing on the motion for new trial Mother's attorney argued that appellants' motion for new trial was groundless because only one juror testified about the deliberations and testified that she was not influenced by her fellow jurors' statements. In assessing sanctions, the trial court found the "pleading was groundless and brought in bad faith for the purpose of harassment." This finding was not reduced to writing in the trial court's final judgment. No particulars were recited,

orally or in writing, about any sanctionable conduct, bad faith, harassment, or good cause. The trial court did not hold a separate hearing and no evidence was introduced to show bad faith on the part of appellants or their attorney.

We agree there is no evidentiary support in this record for a sanctions order under Rule 13 or Chapter 10. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code § 10.001, et. seq. The record from the hearing on the motion for new trial includes a brief mention of sanctions and no testimony about conduct that could be sanctionable. On appeal Mother argues that the trial court's assessment of sanctions was appropriate because the legal basis for the motion for new trial was not a recognized legal basis for a new trial. Even if we accepted Mother's allegation that the pleading was groundless, Mother does not point to any evidence in the record showing bad faith or harassment by appellants, nor have we found any. Because there is no evidentiary support for a sanction in this record, we hold that the trial court erred by ordering appellants to pay Mother $1,000 in sanctions. We sustain appellants' fourth issue.

## CONCLUSION

As noted above, the record does not reflect the trial court's sanctions order was reduced to writing. We therefore reverse the trial court's oral order requiring appellants to pay sanctions to Mother. We affirm the remainder of the judgment.

/s/      Jerry Zimmerer
Justice

Panel consists of Justices Wise, Zimmerer, and Poissant.

19